So Ordered.

Dated: March 2, 2022



Rachel M. Blise
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Nicole Denise Fields,

Debtor.

Case No. 21-26203-rmb

Chapter 7

# DECISION AND ORDER DISAPPROVING REAFFIRMATION AGREEMENT BETWEEN DEBTOR AND ACAR LEASING LTD. d/b/a GM FINANCIAL LEASING

Before the Court is a reaffirmation agreement between the debtor and creditor ACAR Leasing Ltd. d/b/a/ GM Financial Leasing, regarding the debtor's vehicle. The reaffirmation agreement indicates that the debtor's monthly expenses, including the vehicle payment, exceed her monthly income by $823.49. Pursuant to 11 U.S.C. § 524(m)(1), the reaffirmation agreement is presumed to impose an undue hardship on the debtor. The Court held a hearing on the reaffirmation agreement on January 26, 2022, and the Court took the matter under advisement at the conclusion of the hearing. After consideration of the relevant portions of the record, and the statements of the debtor and arguments of counsel at the hearing, the Court disapproves the reaffirmation agreement.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a). Issues regarding reaffirmation agreements are core proceedings. 28 U.S.C. § 157(b)(2)(A), (I), and (O).

## Background

The debtor filed a chapter 7 petition on December 7, 2021. Along with the petition, the debtor filed a Chapter 7 Debtor's Statement of Intention, indicating that she intended to assume, pursuant to § 365(p)(2), a lease on a 2020 GMC Yukon XL (the "Vehicle"). The debtor's schedules, also filed with the petition, disclosed a net monthly income of $3,256.51 and monthly expenses totaling $4,080, which include the monthly payment on the Vehicle. (ECF No. 1.) According to the debtor's schedules, the debtor has a monthly deficit of approximately $823.

On January 6, 2022, ACAR Leasing Ltd. d/b/a/ GM Financial Leasing ("ACAR Leasing") filed a reaffirmation agreement between the debtor and ACAR Leasing (the "Reaffirmation Agreement"). (ECF No. 23.) The Reaffirmation Agreement indicates that the debtor intends to reaffirm a debt in the amount of $31,405.20. The debtor is to pay $1,046.84 per month for 30 months, "plus all amounts due under the Lease at the termination of the Lease." The Reaffirmation Agreement does not disclose what amounts will be due at the termination of the Lease.

The Reaffirmation Agreement reflects the same net income and expense amounts listed in debtor's schedules – *i.e.*, a monthly net income of $3,256.51 and monthly expenses of $4,080, leaving a monthly deficit of $823.49. The debtor acknowledged in the Reaffirmation Agreement that a presumption of undue hardship arises because her monthly expenses exceed her monthly income. The debtor attempted to rebut the presumption with the following statement: "The expenses used in this Schedule are estimated and approximate. The Debtors believe they [sic] can make the payment on the reaffirmed debt."

Upon review of the reaffirmation agreement, the Court determined that the above statement was insufficient to rebut the presumption of undue hardship, and the Court held a hearing on January 26, 2022. At the hearing, the debtor explained that she has savings of

2

Case 21-26203-rmb    Doc 32    Entered 03/02/22 10:56:06    Page 2 of 8

approximately $10,000 from a bonus she received from her employer that she intends to use to finance the shortfall in her monthly expenses. She also explained that the income reported on her schedules represents a reduced work schedule of approximately 90% of her regular work hours, and that she expects to resume a 100% work schedule in the coming months. The debtor stated that, despite the gap between her income and expenses, she believes she can make the payments required under the reaffirmation agreement. She said she would reduce expenses in other areas to ensure she has sufficient funds to make the monthly payments under the reaffirmation agreement. The debtor did not identify any other source of funds that she could use to bridge the delta between her monthly income and her monthly expenses.

The debtor further stated that she likes the Vehicle and wants to retain it. In the time she has owned the Vehicle, she has remained current on the payments. The debtor uses the Vehicle to get to work and for her other transportation needs. The debtor has not considered or pursued obtaining a less expensive vehicle that may have a lower monthly payment.

## Discussion

The circumstances of this case require consideration of a preliminary issue. This matter was brought to the Court as a reaffirmation agreement between the debtor and ACAR Leasing. The underlying contract is a lease agreement, not an installment contract. It is not clear whether a reaffirmation agreement is appropriate for a lease. *See* 11 U.S.C. § 365(p); *see also, e.g.*, *In re Anderson*, 607 B.R. 133, 143 (Bankr. D. Mass. 2019) (stating that "reaffirmation of an assumed lease is inappropriate").

Section 365(p)(2) provides a mechanism for a chapter 7 debtor to assume a personal property lease that is rejected or is not timely assumed by the trustee. 11 U.S.C. § 365(p)(2). There is a split of authority as to whether court approval is required for a debtor's assumption of a lease and whether the debtor has personal liability under a lease absent court approval. *See*

3

*Williams v. Ford Motor Credit Co., LLC*, No. 15-CV-14201, 2016 WL 2731191, at *5-*7 (E.D. Mich. May 11, 2016) (describing split of authority).  For present purposes, the Court assumes that the debtor and ACAR Leasing submitted the Reaffirmation Agreement with the intent of ensuring that the debtor would have personal liability for all obligations under the lease without having to confront the issues discussed in *Williams*.[1]  The Court has therefore viewed the Reaffirmation Agreement as a contract under which the debtor will be personally liable for the entire debt owed to ACAR Leasing pursuant to the lease.  The Court expresses no opinion regarding assumption of a vehicle lease under § 365(p)(2) or a debtor's personal liability under an assumed lease.

The purpose of bankruptcy is for debtors to "reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."  *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quotation omitted).  A debtor cannot achieve the "fresh start" offered by a bankruptcy discharge if she is hampered with otherwise dischargeable debt.  Therefore, reaffirmation of debts must be done with caution and only with the conviction that the debtor will be able to make payments on the reaffirmed debt successfully.

Reaffirmation agreements are governed by § 524(c), (d), and (m) of the Bankruptcy Code.  Any reaffirmation agreement that does not meet the strict requirements of these provisions is unenforceable.  For example, the debtor must receive detailed disclosures regarding the reaffirmed debt and the credit terms involved.  11 U.S.C. § 524(c)(2), (k).  This is because

---

[1] The Reaffirmation Agreement expressly refers to § 365(p)(2) and states, "Creditor [ACAR Leasing] is willing to have the Lease assumed by Debtor(s) upon such terms as are contained in this agreement."  (ECF No. 23 at 8.)  This language indicates that ACAR Leasing suggested or demanded that the assumption be submitted as a reaffirmation agreement in an attempt to ensure there would be no discharge of the debtor's personal liability under the lease.

4

reaffirmation agreements render a debtor personally liable for debt that would otherwise be dischargeable.

When a debtor's monthly expenses exceed her monthly income, a presumption arises that the reaffirmed debt will impose an undue hardship on the debtor. 11 U.S.C. § 524(m)(1). The court is required to review the reaffirmation agreement and any other submissions from the debtor in connection with the reaffirmation agreement to determine whether the presumption of undue hardship has been rebutted. *Id.* If the debtor does not rebut the presumption to the satisfaction of the court through written submissions, the court must hold a hearing, and the court has discretion to disapprove the reaffirmation agreement if the presumption still is not rebutted to the court's satisfaction. *Id.*; *see also In re Grether*, 554 B.R. 150, 156 (Bankr. N.D. Tex. 2016) ("Where it is doubtful that a debtor can make the payments called for by a reaffirmation agreement and the debtor has failed to identify sources of additional funds to make payments required under a reaffirmation agreement, the reaffirmation agreement should normally be disapproved.").

When determining whether a reaffirmation agreement will impose an undue hardship on the debtor, courts often consider several factors, including the terms of the debt to be reaffirmed and the necessity of the collateral for the debt. *In re Strong*, 232 B.R. 921, 924 (Bankr. E.D. Tenn. 1999). For most debtors, a vehicle is a necessity. But a debtor's need for vehicular transportation is not, on its own, sufficient to overcome a presumption of undue hardship. *In re Stevens*, 365 B.R. 610, 612 (Bankr. E.D. Va. 2007).

This is especially so when the debtor is unable to show that she will have sufficient income to pay the reaffirmed debt along with her other monthly expenses. *See In re Bartz*, No. BK 10-01897, 2011 WL 671991, at *5 (Bankr. N.D. Iowa Feb. 17, 2011) (debtor's monthly

expenses exceeded his income by $321); *In re Hart*, 402 B.R. 78, 86-87 (Bankr. D. Del. 2009) (debtors' monthly expenses exceeded their income by $3,001); *In re Schmidt*, 397 B.R. 481, 484-85 (Bankr. W.D. Mo. 2008) (debtor's monthly expenses exceed his income by $519.91); *In re Husain*, 364 B.R. 211, 217 (Bankr. E.D. Va. 2007) (debtors' expenses exceeded their income by $3,000); *In re Payton*, 338 B.R. 899, 905-06 (Bankr. D.N.M. 2006) (debtors' monthly expenses exceeded their income by $314). Courts "should not be in the business of approving reaffirmation agreements where the debt is something the Debtor cannot afford." *In re Stillwell*, 348 B.R. 578, 582 (Bankr. N.D. Okla. 2006).

Here, the Reaffirmation Agreement requires the debtor to pay $1,046.84 each month for 30 months, "plus all amounts due under the Lease at the termination of the Lease." (ECF No. 23.) The debtor's Schedule I indicates that she pays $1,250 per month for rent, $191 for insurance for the Vehicle, and $250 per month for transportation expenses for the Vehicle. After paying those expenses, along with the monthly payment under the Reaffirmation Agreement, the debtor would be left with just $518 per month to pay for utilities, telephone, internet, food, clothing, and medical expenses for herself and a minor dependent, far less than the amounts she has budgeted for those items. If the debtor spends the budgeted amount for each of her expenses, her expenses will exceed her income by approximately $823 each month.

The debtor asserts that the expenses on Schedule I are just approximations, and that she can trim the budget where necessary to afford the Vehicle payments. The Court cannot discern how the debtor could possibly trim enough from her already modest budget to cover the deficit each month. For example, the debtor budgeted just $300 for food and housekeeping supplies and just $133 for utilities. There is little room to adjust the debtor's expenses, and they certainly cannot be adjusted to the tune of over $800 per month.

The debtor did not demonstrate to the Court's satisfaction that she will be able to cover the shortfall from other sources. The debtor has savings of approximately $10,000, but that amount will cover the debtor's budget shortfall for just 12 months at most. The Reaffirmation Agreement renders the debtor liable for 30 months of payments. The debtor did not explain how she intends to finance the remaining 18 months of payments.

The debtor's expected increase in income from increased hours also will not provide enough funds to sustain the monthly payment on the Vehicle in the long term. The debtor is currently working a 90% schedule and intends to increase that to 100%. She expects the increase to occur later this year, but she did not say precisely when she will start receiving increased pay. The increased hours will yield approximately $510 per month[2] in gross pay, but that amount will be reduced by income taxes and other associated expenses and deductions. A monthly deficit will remain that cannot be financed with the debtor's savings.

Moreover, the debtor made no effort to obtain a less expensive vehicle, nor did she investigate her options. The Court appreciates that the debtor requires a vehicle for transportation. But a vehicle with a payment of over a thousand dollars a month is a luxury item. *Bartz*, 2011 WL 671991 at *5 (disapproving reaffirmation agreement for "a new and expensive Chevy Silverado"); *In re Tarnowski*, No. 08-02262, 2009 WL 424999, at *3 (Bankr. N.D. Iowa Feb. 11, 2009) ("Debtors have not demonstrated the need for a luxury vehicle or that they have explored less expensive options."). The monthly payment on the Vehicle is over 30% of the debtor's current monthly income, over three times as much as the debtor's monthly budget for food, and nearly as much as the debtor pays for rent. The debtor has not shown why it is necessary for her to retain this particular vehicle with such a high monthly payment when it is

---

[2] At a 90% schedule, the debtor's gross income is $4,591.30 per month. At 100% and the same pay rate, the debtor's monthly gross income would be $5,101.11.

clear she cannot afford the payment without sacrificing necessities or going into debt to cover her monthly expenses. *See Stillwell*, 348 B.R. at 583 (disapproving reaffirmation agreement on debtor's only vehicle, a GMC Yukon, where payment was 27% of monthly income and debtor's expenses exceeded income by $385.81).

The debtor has not rebutted the presumption that the Reaffirmation Agreement imposes an undue hardship. Therefore, the Court will disapprove the Reaffirmation Agreement pursuant to § 524(m)(1).

## Conclusion

A presumption of undue hardship arises 11 U.S.C. § 524(m)(1) because the debtor's expenses with the reaffirmed debt far exceed her monthly income. The presumption has not been rebutted to the satisfaction of the Court. Accordingly,

IT IS HEREBY ORDERED that the reaffirmation agreement between the debtor and ACAR Leasing Ltd. d/b/a GM Financial Leasing is disapproved and is of no effect.

# # # # #